UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | | |
|---|---|---|
| ORA P. ROBINETTE, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. _____ |
| ZIMMER, INC., ZIMMER HOLDINGS, INC., and ZIMMER ORTHOPAEDIC SURGICAL PRODUCTS, INC., | § § § § § | |
| Defendants. | § § § | June 15, 2011 |

## ORIGINAL COMPLAINT

COMES NOW the Plaintiff, ORA P. ROBINETTE, by and through her undersigned Counsel, and for her Complaint against the Defendants, allege as follows:

### NATURE OF CASE

1. This is an action for damages suffered by ORA P. ROBINETTE ("Plaintiff"), as a direct and proximate result of Defendants' wrongful conduct in connection with the development, design, manufacture, distribution and selling of Defendants' knee replacement product, the Zimmer Gender Solutions Natural-Knee Flex System ("Zimmer Flex Knee").

2. Defendants knew or should have known that the Zimmer Flex Knee can loosen in patients, such as Plaintiff, causing personal injury, significant pain, and loss of movement, and that this injury can only be remedied through further medical treatment, including possible subsequent revision surgery and/or knee replacement. Further, Defendants misled health care professionals and the public into believing that the Zimmer Flex Knee was safe and effective for use in knee replacement surgery; engaged in deceptive, misleading and unconscionable promotional or sales methods to convince health care professionals to utilize the Zimmer Flex

Knee, even though Defendants knew or should have known that the Zimmer Flex Knee was unreasonably unsafe; and failed to warn health care professionals and the public about the safety risks of the Zimmer Flex Knee.

## PARTIES

3. Plaintiff is a citizen of Belfry, County of Pike and State of Kentucky.

4. Defendant Zimmer, Inc. is a for profit corporation organized and existing under the laws of Delaware and has its principal place of business located in Warsaw, Indiana.

5. Defendant Zimmer Holdings, Inc. is a for profit corporation organized and existing under the laws of Delaware and its principal place of business is located in Warsaw, Indiana.

6. Defendant Zimmer Orthopaedic Surgical Products, Inc. is a for profit corporation organized and existing under the laws of Ohio and has its principal place of business in Dover, Ohio.

7. At all times material hereto, Defendants developed, designed, manufactured, distributed, marketed and sold the Zimmer Flex Knee. Defendants' products, including the Zimmer Flex Knee, are sold throughout the world, including within the State of Kentucky.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. Venue in this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), as a substantial number of the events, actions or omissions giving rise to Plaintiff's

claims occurred in this district. At all times material hereto, Defendants were for profit corporations authorized to and doing substantial business in this district.

## FACTUAL BACKGROUND

## KNEE REPLACEMENT BACKGROUND

10. Total Knee Arthroplasty ("TKA"), commonly referred to as a "total knee replacement," is a common medical procedure. The surgery is designed to help relieve pain and improve joint function in people with severe knee degeneration due to arthritis or trauma.

11. Upon information and belief, the TKA procedure is done by separating the muscles and ligaments around the knee to expose the inside of the joint. The ends of the thigh bone (femur) and the shin bone (tibia) are removed as is often the underside of the kneecap (patella).

12. Upon information and belief, about 85 to 90 percent of total knee replacements are successful for up to ten years.

13. *Mechanical loosening* means that for some reason (other than infection) the attachment between the artificial knee and the bone has become loose.

14. Loosening can occur with any component of the artificial knee: the femoral component, the tibial component or the patellar component.

15. Upon information and belief, loosening of an artificial knee can be diagnosed using radiographic imaging. In radiographic imaging, a loose knee joint is demonstrated by one or more radiolucent lines around the contours of the artificial knee joint.

16. A loose artificial knee is a problem because it can cause pain, swelling, loss of range of motion and wearing away of the bone. A painful loose knee can restrict the patient's

daily activities severely. A loose artificial knee also involves severe psychical burden for the patient.

17. Once the pain becomes unbearable or the individual loses function of the knee, treatment is required — including the need for another operation to revise the knee replacement. A loose, painful artificial knee can usually, but not always, be revised and replaced.

18. The purpose of knee revision surgery is to remove the failed knee implant and replace it with a new one.

19. Upon information and belief, a revision operation of a failed knee implant is problematic because the surgeon must reconstruct the severe bone loss caused by bone destruction around the failed total knee prosthesis, and restore the stability in the revised total knee.

20. Upon information and belief, the results of a revision operation are not as good as the first knee replacement operation, and the risks of complications are higher. The range of motion in the knee after the revision surgery may be smaller and the walking capacity may also be diminished. The rate of loosening is higher after revision surgery than after primary knee replacement surgery.

## ZIMMER FLEX KNEE FACTS

21. Zimmer was founded in 1927, and purports to be a worldwide leader in the design and manufacture of orthopaedic reconstructive, spinal and trauma devices, dental implants and related orthopaedic surgical products.

22. The Zimmer Flex Knee uses a "high-flex" component that purports to allow for a greater degree of flexion compared to the standard component.

4

23. The Defendants generally, manufactured, labeled, packaged, distributed, supplied, marketed, advertised and/or otherwise engaged in all activities that are part and parcel of the sale and distribution of a pharmaceutical, and by said activities, caused the Zimmer Flex Knee to be placed into the stream of commerce throughout the United States.

24. Defendants made, participated in and/or contributed to filings with the Food and Drug Administration ("FDA") in conjunction with the approval process for the Zimmer Flex Knee.

25. Upon information and belief, Defendants sent to the Food and Drug Administration a 501(k) submission for the "high-flex" component.

26. Upon information and belief, Defendants were in control of the design, assembly, manufacture, marketing, testing, distribution, packaging, labeling, processing, supplying, promotion, sales and the issuance of product warnings and related information with respect to the Zimmer Flex Knee.

27. Defendants were at all times material hereto subject to the laws of the United States of America, including provisions relating to the FDA, and the rules and regulations thereof, in conjunction with the approval process, labeling and other aftermarket activities that pertain to the Zimmer Flex Knee.

28. The Zimmer Flex Knee has been widely advertised, marketed and represented by the Defendants as a safe and effective treatment.

## ZIMMER FLEX KNEE PROBLEMS

29. Studies show that a knee implant that allows for higher flexation, like the Zimmer Flex Knee, is more likely to fail because higher flexation places the knee implant at a higher risk of loosening.

5

30. In 2007, The Journal of Bone and Joint Surgery (British Edition), published a peer-reviewed study by professors at the Seoul National University College of Medicine titled, *High Incident of Loosening of the Femoral Component in the Legacy Posterior Stabilised-Flex Total Knee Replacement.* The study showed that 38% of the implanted LPS high-flex knees were loose shortly after 2 years post implant. From the group of patients with loose knees, over half (56%) had their knee revised due to pain.

31. Then on or about September 15, 2010, Defendants sent an "Urgent Device Correction and Removal" notice to surgeons regarding certain LPS high-flex femoral components.

32. On or about December 2, 2010, the FDA issued a Class II Recall for certain LPS high-flex femoral components because the component exhibited a nonconforming internal CAM radius.

33. Additionally, numerous peer-reviewed articles establish that the Zimmer "high-flex" knee fails to provide any statistically significant added flexion or range of motion compared to the standard Zimmer Knee which is not "high-flex."

34. From the time that Defendants first began selling the Zimmer Flex Knee in the United States, the product labeling and product information for the Zimmer Flex Knee failed to contain adequate information, instructions and warnings concerning implantation of the product and the increased risks that the Zimmer Flex Knee can loosen in patients.

35. Despite its knowledge of the serious injuries associated with use of the Zimmer Flex Knee, Defendants engaged in a marketing and advertising program which as a whole, by affirmative and material misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of the Zimmer Flex Knee was safe.

36. Upon information and belief, Defendants downplayed and understated the health hazards and risks associated with the use of the Zimmer Flex Knee and through promotional literature as well as sales visits to orthopedic surgeons, deceived physicians and potential users of the Zimmer Flex Knee by relaying positive information, while concealing the nature and extent of known adverse and serious health effects.

## FACTUAL ALLEGATIONS

37. On or about April 26, 2010, Plaintiff ORA P. ROBINETTE's physician implanted a Zimmer Flex Knee system into Plaintiff ORA P. ROBINETTE.

38. Prior to Plaintiff ORA P. ROBINETTE's knee replacement surgery, Plaintiff's treating physician, as well as Plaintiff, was exposed to the aforementioned advertising and marketing campaign directly by the Defendants.

39. Plaintiff and Plaintiff's physician, either through direct promotional contact with Sales Representatives, through word-of-mouth with other health care providers, and/or through promotional materials, received the information the Defendants intended Plaintiff and Plaintiff's physician to receive and view, to wit: that the Zimmer Flex Knee was safe and effective for use in TKA procedures.

40. Plaintiff began experiencing severe and debilitating pain shortly after implant.

41. Plaintiff returned to Plaintiff's physician several times due to constant pain relating to her Zimmer Flex Knee.

42. As a direct and proximate result of the use of the Zimmer Flex Knee, Plaintiff suffered, and continues to suffer, serious bodily injury and harm.

43. As a direct and proximate result of the use of the Zimmer Flex Knee, Plaintiff incurred, and continues to incur, medical expenses to treat her injuries and condition.

7

44. At no time material to her use of the Zimmer Flex Knee was Plaintiff or her physicians told, warned, or given information about the higher risks of loosening in the Zimmer Flex Knee.

## COUNT I

## NEGLIGENCE

45. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further states and alleges as follows:

46. At all times relevant herein, Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, marketing, sale and distribution of the Zimmer Flex Knee, including a duty to ensure that the Zimmer Flex Knee did not pose a significantly increased risk of bodily injury to its users.

47. Defendants had a duty to exercise reasonable care in the advertising and sale of the Zimmer Flex Knee, including a duty to warn Plaintiff and other consumers of the dangers associated with the use of the Zimmer Flex Knee that were known or should have been known to Defendants at the time of the sale of the Zimmer Flex Knee to the Plaintiff.

48. Defendants failed to act as a reasonably prudent manufacturer that possesses the requisite knowledge regarding its products.

49. Defendants failed to exercise reasonable care in the design, formulation, testing, manufacture, marketing, sale and distribution of the Zimmer Flex Knee because Defendants knew or should have known that the Zimmer Flex Knee had a propensity to cause serious injury, including loosening and the increased risk of the need for revision surgery.

50. Defendants failed to exercise ordinary care in the labeling, advertising and sale of the Zimmer Flex Knee and failed to issue adequate pre-marketing or post-marketing warnings to

prescribing physicians and the general public regarding the risk of serious injury, including injuries such as loosening and the increased risk of the need for revision surgery.

51. Defendants knew or should have known Plaintiff could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

52. Defendants failed to warn the general public, including Plaintiff, of the risk of serious harm.

53. Defendants breached their duty of reasonable care to Plaintiff by failing to exercise due care under the circumstances.

54. As a direct and proximate result of Defendants' acts and omission, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale and distribution of the Zimmer Flex Knee, Plaintiff was implanted with the Zimmer Flex Knee and suffered severe and debilitating injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, loss of income earning capacity, permanent instability and loss of balance, immobility, and pain and suffering, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II

### STRICT LIABILITY

55. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further states and alleges as follows:

56. At all relevant times hereto, Defendants were engaged in the development, testing, manufacturing, marketing and sales of the Zimmer Flex Knee. Defendants designed,

9

manufactured, marketed, and sold the Zimmer Flex Knee to medical professionals and their patients, knowing it would be implanted for knee replacements.

57. Zimmer Flex Knee as designed, manufactured, marketed and sold by Defendants reached Plaintiff without substantial change in its condition and was used by Plaintiff in a reasonably foreseeable and intended manner.

58. Zimmer Flex Knee was "defective" and "unreasonably dangerous" when it entered the stream of commerce and was received by Plaintiff. The Zimmer Flex Knee was dangerous to an extent beyond that which would be contemplated by the ordinary consumer and the benefits of the design outweighed the risk of danger inherent in the design.

59. The Zimmer Flex Knee was used in the manner for which it was intended; that is, for artificial knee replacement. This use resulted in injury to Plaintiff.

60. At no time did Plaintiff have reason to believe that Zimmer Flex Knee was in a condition not suitable for its proper and intended use among patients.

61. Plaintiff was not able to discover, nor could she have discovered through the exercise of reasonable care, the defective design and/or manufacture of the Zimmer Flex Knee. Further, in no way could Plaintiff have known that Defendants had designed, developed, and manufactured the Zimmer Flex Knee in such a way as to increase the risk of harm or injury to the recipients of the implant.

62. The Zimmer Flex Knee is defective in design and/or manufacture because of its propensity to loosen and cause patients unnecessary pain and the increased risk of the need for repeat surgical procedures.

63. The Zimmer Flex Knee is unreasonably dangerous because it was sold to Plaintiff without adequate warnings regarding, *inter alia*, the propensity of Zimmer Flex Knees to loosen

and cause serious pain and necessitate additional surgery; the post-marketing experience of higher rates of loosening and revision surgery with the Zimmer Flex Knee; and the probability of suffering loosening and the increased risk of the need for revision surgery.

64.     Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable at the time Defendants sold the Zimmer Flex Knee to Plaintiff.

65.     Defendants knew or should have known of the defective and dangerous nature of the Zimmer Flex Knee. Despite this knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiff and her physicians that the Zimmer Flex Knee causes serious injuries including, loosening, and the increased likelihood of the need for revision surgery.

66.     The prosthesis used by Plaintiff's physician was not substantially changed, modified, or altered at any time in any manner whatsoever prior to use. The subject prosthesis reached the Plaintiff in such a condition that was unreasonably dangerous to her and failed to perform in a manner reasonably foreseeable by Defendants.

67.     As a direct and proximate result of Defendants' wrongful conduct, including the Zimmer Flex Knee's defective and dangerous design, manufacture and/or inadequate warnings, Plaintiff has sustained and will continue to sustain severe and debilitating injuries, economic loss and other damages including, but not limited to, cost of medical care, rehabilitation, lost income or earnings capacity, mental anguish, loss of capacity to lead and enjoy a normal life, inconvenience, permanent instability and loss of balance, immobility, and pain and suffering, for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT III

## PRODUCTS LIABILITY – FAILURE TO WARN

68. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further states and alleges as follows:

69. Defendants were responsible for the research, development, design, testing, manufacturing, inspection, labeling, distribution, marketing, promotion, selling and otherwise releasing into the stream of commerce the Zimmer Flex Knee and, in the course of same, directly advertised or marketed the product to the FDA, health care professionals, and consumers, or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of the Zimmer Flex Knee.

70. Defendants failed to adequately warn health care professionals and the public, including Plaintiff and her prescribing physician, of the true risks of the Zimmer Flex Knee, including that the Zimmer Flex Knee could loosen, causing severe pain and injury, and requiring further treatment, including revision surgery and/or knee replacement.

71. Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Zimmer Flex Knee. Had they done so, proper warnings would have been heeded and no health care professional, including Plaintiff's physician, would have prescribed the Zimmer Flex Knee, or no consumer, including Plaintiff, would have purchased and/or used the Zimmer Flex Knee.

72. The Zimmer Flex Knee, which Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce, was defective due to inadequate post-marketing warnings and/or instructions, after Defendants knew or should have known that there was reasonable

evidence of an association between the Zimmer Flex Knee and knee replacement loosening causing serious injury and pain. Defendants failed to provide adequate warnings to health care professionals and the consuming public, including Plaintiff, and continued to aggressively promote the Zimmer Flex Knee.

73. Defendants failed to perform or otherwise facilitate adequate testing; failed to reveal and/or concealed testing and research data; and selectively and misleadingly revealed and/or analyzed testing and research data.

74. Defendants violated the Products Liability Act, KRS Chapter 411.300, *et seq.*

75. As a direct and proximate result of Defendants' conduct as aforesaid, Plaintiff suffered serious and permanent non-economic and economic injuries.

## COUNT IV

## PRODUCTS LIABILITY – DESIGN DEFECT

76. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further states and alleges as follows:

77. Defendants researched, developed, manufactured, distributed, marketed, promoted, supplied and sold the Zimmer Flex Knee, which is defective and unreasonably dangerous to consumers.

78. The Zimmer Flex Knee is defective in its design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceeded the benefits associated with its design and formulation. The Zimmer Flex Knee is defective in design or formulation in that it lacks efficacy and/or it poses a greater likelihood of injury than other knee replacement devices and similar knee replacement devices on the market and is more dangerous than ordinary consumers can reasonably foresee.

13

79. If the design defect were known at the time of manufacture, a reasonable person would have concluded that the utility of the Zimmer Flex Knee did not outweigh the risk of marketing a product designed in that manner.

80. The defective condition of the Zimmer Flex Knee rendered it unreasonably dangerous and/or not reasonably safe, and the Zimmer Flex Knee was in this defective condition at the time it left the hands of the Defendants. The Zimmer Flex Knee was expected to and did reach consumers, including Plaintiff, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

81. Plaintiff and her physician were unaware of the significant hazards and defects in the Zimmer Flex Knee.

82. The Zimmer Flex Knee was unreasonably dangerous and/or not reasonably safe in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the period that Plaintiff used the Zimmer Flex Knee, it was being utilized in a manner that was intended by Defendants.

83. At the time Plaintiff received and used the Zimmer Flex Knee, it was represented to be safe and free from latent defects.

84. Defendants are strictly liable to Plaintiff for designing, manufacturing and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendants because of the design defects.

85. Defendants knew or should have known of the danger associated with the use of the Zimmer Flex Knee, as well as the defective nature of the Zimmer Flex Knee, but continued to design, manufacture, sell, distribute, market, promote and/or supply the Zimmer Flex Knee so

as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the Zimmer Flex Knee.

86. Defendants violated the Products Liability Act, KRS Chapter 411.300, *et seq.*

87. As a direct and proximate cause of the design defect and Defendants' misconduct as set forth herein, Plaintiff has suffered and continues to suffer serious and permanent non-economic and economic damages.

88. WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V

## BREACH OF EXPRESS WARRANTY

89. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further states and alleges as follows:

90. Defendants advertised, labeled, marketed and promoted its product, the Zimmer Flex Knee, representing the quality to health care professionals, the FDA, Plaintiff and the public in such a way as to induce its purchase or use, thereby making an express warranty that the Zimmer Flex Knee would conform to the representations. More specifically, Defendants represented that the Zimmer Flex Knee was safe and effective, that it was safe and effective for use by individuals such as Plaintiff, and/or that it was safe effective to treat Plaintiff's condition.

91. The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the good and become part of the basis of the bargain creating an express warranty that the good shall conform to the affirmations of fact or promises.

92. The Zimmer Flex Knee did not conform to the representations made by Defendants in that the Zimmer Flex Knee was not safe and effective, was not safe and effective for use by individuals such as Plaintiff, and/or was not safe and effective to treat in individuals, such as Plaintiff.

93. At all relevant times, Plaintiff used the Zimmer Flex Knee for the purpose and in the manner intended by Defendants.

94. Plaintiff and Plaintiff's physician, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

95. The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries.

96. As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale and distribution of the Zimmer Flex Knee, Plaintiff was implanted with the Zimmer Flex Knee and suffered severe and debilitating injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, loss of earning capacity, permanent instability and loss of balance, immobility, and pain and suffering, for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VI

### BREACH OF IMPLIED WARRANTIES

97. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further states and alleges as follows:

98. The Zimmer Flex Knee was not reasonably fit for the ordinary purposes for which such goods are used and did not meet the expectations for the performance of the product when

used in the customary, usual and reasonably foreseeable manner. Nor was the Zimmer Flex Knee minimally safe for its expected purpose.

99. At all relevant times, Plaintiff used the Zimmer Flex Knee for the purpose and in the manner intended by Defendants.

100. Plaintiff and Plaintiff's physician, by the use of reasonable care could not have discovered the breached warranty and realized its danger.

101. The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries.

102. As a direct and proximate result of Defendants' acts and omissions, including their failure to exercise ordinary care in the design, formulation, testing, manufacture, sale and distribution of the Zimmer Flex Knee, Plaintiff was implanted with the Zimmer Flex Knee and suffered severe and debilitating injuries, economic loss, and other damages, including but not limited to, cost of medical care, rehabilitation, lost income, loss of earning capacity, permanent instability and loss of balance, immobility, and pain and suffering, for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

    a) Compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount totally compensate Plaintiff for all of her injuries and damages, both past and present;

    b) Special damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of her injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs of past and future rehabilitation and/or home health care, lost income, loss of earning capacity, permanent disability, including permanent instability and loss of balance, and pain and suffering;

c)  Attorneys' fees, expenses, and costs of this suit;

d)  Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

e)  Such other relief as this Court deems necessary, just and proper

## JURY DEMAND

Plaintiff specifically demands a trial by jury of all claims asserted in this Complaint.

Dated: June 15, 2011                    Respectfully submitted,


                                        s/Michael E. Liska
                                        Kentucky Bar No. 84515
                                        GARY C. JOHNSON, P.S.C.
                                        P.O. Box 1717
                                        Lexington, Kentucky 40588-1717
                                        Telephone: (859) 268-4300
                                        Facsimile: (859) 268-7318
                                        Email: liska@garycjohnson.com